# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 8, 2014

## STATE OF TENNESSEE v. ANDRE WILSON

**Appeal from the Criminal Court for Shelby County**
**No. 12-01044     Lee V. Coffee, Judge**

---

**No. W2013-02012-CCA-R3-CD  - Filed September 19, 2014**

---

The Defendant, Andre Wilson, was convicted by a Shelby County jury of aggravated robbery and felony reckless endangerment, for which he received an effective sentence of twelve years' incarceration.  The sole issue presented for our review is whether the evidence is sufficient to support the conviction of felony reckless endangerment.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., joined.  JERRY L. SMITH, J., Not Participating.

James E. Thomas, Memphis, Tennessee, for the Defendant-Appellant, Andre Wilson.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Lessie Rainey, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This case arises from a robbery at the B-52 Market in Memphis on July 3, 2011.  The Defendant, Andre Wilson, was subsequently indicted by the Shelby County Grand Jury for one count of aggravated robbery of Lawrence Granderson, a Class B felony, and one count of reckless endangerment with a deadly weapon against Romello Brooks, a Class E felony. See T.C.A. §§ 39-13-402, -103.  The following proof, in pertinent part, was presented at trial.

**Trial.**  David Huggins, store manager of the B-52 Market in Memphis, testified that he was working on July 3, 2011.  He explained that the store had four surveillance cameras outside that never stopped recording.  He identified a surveillance video from the day in

question, which was time stamped at 6:51 a.m. He also identified the Defendant in the video, whom he knew as "NuNu." Mr. Huggins, who had been working at the counter that morning, said that an older man came to the store with a small child, bought some items, and then left. He recalled that the man then returned, "upset and holding his face" and still holding the child's hand. The man reported that he had been hit and robbed. Mr. Huggins stated that the man was bleeding and asked to use the phone to call the police. He did not observe the events outside the store because he had been serving customers at the time.

Lawrence Granderson, the named victim in the aggravated robbery count, testified that he was hard of hearing. The victim said that on July 3, 2011, he returned home at 6:00 a.m. after working the night shift. He then brought his four-year-old grandson, Romello Brooks, to the B-52 Market to get some breakfast. As he was approaching the store, a man who was sitting outside asked him, "Man, you got a dollar?" The victim told the man, later identified as the Defendant, that he did not have any money and entered the store. Because the store was not yet serving food, he used a ten dollar bill to purchase nine one-dollar lottery tickets and received one dollar in change. As he left the store and headed toward his van, the victim said that the Defendant quickly "jumped up" and demanded his money. After the victim told the Defendant that he did not have any money, he observed a gun, which he described as a shiny, dark revolver. He said that the Defendant "had [the gun] on [him]" and "was holding it low" as if to hide it from passersby. He testified that he was afraid because the Defendant pointed the gun at him and "waved it a few times" toward the ground and toward his grandson, who was standing beside him. The victim stated that if the gun had discharged, it would have struck his grandson. He testified that the incident "was just a messed up thing[.]" As he tried to leave, the Defendant pushed him and held the gun on him, demanding money. The Defendant then took the dollar and lottery tickets that were in the victim's hand. As the victim walked toward the store, the Defendant came up behind him and hit him on the side of the face with the gun, drawing blood. The victim then entered the store and called the police. At trial, he was unable to identify the Defendant.

Lashonia Brooks testified that the victim is her stepfather and that her son, Romello Brooks, was four years old in July 2011. After the incident at the B-52 Market, Ms. Brooks said that the victim's face was "messed up" and swollen. She stated that, prior to July 3, 2011, her stepfather did not have a scar on his face. She identified her son and stepfather in the store's surveillance video. Although she could not recognize anyone else in the video, she said that she had known the Defendant and his family all her life.

Sergeant Tim Goodroe of the Memphis Police Department (MPD) took a victim statement and showed a photographic lineup to the victim on July 18, 2011. He said that the victim almost immediately identified the Defendant. The victim signed the bottom of the form and wrote, "This person robbed me at gunpoint."

MPD Sergeant Velynda Thayer testified that she was the lead investigator in the instant case. She obtained the surveillance video from the B-52 Market and developed the Defendant as a suspect. She said that the victim's identification of the Defendant from the photographic lineup "was pretty immediate." After filing a warrant for the Defendant's arrest, Sergeant Thayer was no longer involved in the case.

Sharon Baker testified as the keeper of the records for the Shelby County General Sessions Court Clerk's Office. She authenticated an audio recording from a preliminary hearing in September 2011 where the victim identified the Defendant as the man who robbed him.

Based on the above proof, the jury found the Defendant guilty as charged of aggravated robbery and reckless endangerment with a deadly weapon. The trial court subsequently sentenced the Defendant as a Range I, standard offender to consecutive terms of ten years' imprisonment for the aggravated robbery conviction and two years' imprisonment for the felony reckless endangerment conviction. After the court denied the Defendant's motion for new trial, this timely appeal followed.

## ANALYSIS

On appeal, the Defendant challenges only the sufficiency of the convicting evidence with regard to his felony reckless endangerment conviction against four-year-old Romello Brooks. He does not challenge his aggravated robbery conviction or the sentences imposed. Specifically, the Defendant argues that the evidence failed to establish that Romello Brooks was in imminent danger of death or serious bodily injury. He claims that the proof, at best, reflects "only a mere possibility of danger, not a reasonable probability of danger." The State responds that there was sufficient evidence at trial to support the jury's verdict. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Id.

A person commits the offense of reckless endangerment when he or she "recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a). When committed with a deadly weapon, the offense is a Class E felony. Id. § 39-13-103(b)(2). A firearm is a "deadly weapon." Id. § 39-11-106(a)(5)(A). A person acts recklessly "when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Id. § 39-11-302(c). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." Id.

The Tennessee Supreme Court has held that "for the threat of death or serious bodily injury to be 'imminent,' the person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger." State v. Payne, 7 S.W.3d 25, 28 (Tenn. 1999) (citing State v. Fox, 947 S.W.2d 865, 866 (Tenn. Crim. App. 1996)). The Court reasoned that the imminent danger element required the State to show that a person or class of persons

was in the zone of danger. Id. The term "zone of danger" refers to "that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area." Id.

In this case, the Defendant was convicted as charged of felony reckless endangerment against four-year-old Romello Brooks. In challenging the sufficiency of the evidence, he asserts that the proof failed to establish that Romello Brooks was placed in a reasonable probability of danger. He contends that there was no evidence that the gun was real, loaded, or ever discharged. We conclude that a rational trier of fact could have found beyond a reasonable doubt that the Defendant engaged in reckless conduct that placed Romello Brooks in imminent danger of death or serious bodily injury, and that the Defendant committed the offense with a deadly weapon.

The evidence adduced at trial, taken in the light most favorable to the State, established that the victim and his four-year-old grandson, Romello Brooks, were walking out of the B-52 Market on the morning of July 3, 2011. As they headed toward the victim's van, the Defendant "jumped up" and demanded money from the victim, who was hard of hearing. The victim testified that Defendant then held a shiny, dark revolver on him and kept the weapon low to conceal it from passersby. The gun was pointed at the victim and at his four-year-old grandson, who was standing next to him. He said that he was afraid and that if the weapon had fired, it would have struck Romello Brooks. The victim testified that the Defendant was waving the gun around toward the ground in close proximity to his grandson and that the incident "was just a messed up thing[.]"

Based on this evidence, the jury could reasonably infer that the gun was real and loaded and that the life of Romello Brooks was threatened. The facts established that the Defendant consciously disregarded "a substantial and unjustifiable risk" when he waved a gun toward the four-year-old boy. Although the Defendant argues that Romello Brooks was not placed in imminent danger, the jury carefully viewed the surveillance video and chose to accredit the victim's testimony that his grandson could have been shot. See State v. Evans, 108 S.W.3d 231, 236-27 (Tenn. 2003) (citing State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000)). We conclude that the evidence sufficiently supports the Defendant's conviction for felony reckless endangerment. Accordingly, he is not entitled to relief.

**CONCLUSION**

Upon review, we affirm the judgments of the Shelby County Criminal Court.

_____

CAMILLE R. McMULLEN, JUDGE

-5-